UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:10-cr-20672-KMM-6

UNITED STATES OF AMERICA,

v.

WILFREDO GONZALEZ ARCE,

    Defendant.

_____/

**REPORT AND RECOMMENDATION**
**ON PETITION FOR REVOCATION OF SUPERVISED RELEASE**

**THIS MATTER** arose on a Petition for Revocation of Supervised Release filed against Defendant Wilfredo Gonzalez Arce (ECF No. 428). The Honorable K. Michael Moore, United States District Court Judge for the Southern District of Florida, referred this matter to the undersigned Magistrate Judge for all necessary and proper action with respect to any and all violations of supervised release (ECF No. 432). The government filed a Superseding Petition on October 8, 2021 (ECF No. 453), and an evidentiary hearing was held on October 22, 2021. The Parties further filed supplemental briefing as to a legal question raised at the hearing (ECF Nos. 464, 465). For the reasons set forth below, the undersigned **RECOMMENDS** that the Petition be **GRANTED**.

    **I.**    **BACKGROUND**

Defendant initially began a three-year term of supervised release on August 8, 2013, which was revoked on October 13, 2016 following seven violations of the conditions of his release (ECF No. 424). The Court ordered that Defendant be committed to the custody of the Bureau of Prisons

for a term of 15 months, to be followed by a new term of supervised release (*id*.). Defendant commenced the subsequent term of supervised release on June 12, 2017 (ECF No. 453).

The United States Probation Office filed a Petition for Warrant or Summons for Offender Under Supervision on November 6, 2020, charging four violations pertaining to criminal conduct that the Petition alleged took place on October 29, 2020 (ECF No. 428). Judge Moore issued a warrant for Defendant's arrest, and he was taken into federal custody on December 22, 2020. The charges, consisting of 3rd and 2nd degree grand theft and criminal mischief, also gave rise to a criminal case in Miami-Dade County Circuit Court. A series of motions to continue the evidentiary hearing as to Defendant's supervised release followed throughout 2021 in the hopes that the state case could be resolved prior to any proceedings by this Court on the matter; that criminal case is now set for trial on January 10, 2022. The Court set the matter for evidentiary hearing on October 22, 2021 in the interest of justice (ECF No. 452).

On October 7, 2021, the government filed its Superseding Petition, alleging a total of 14 conditions of supervised release; the government later abandoned seven of the violations and presented evidence at the hearing on the remaining seven. Defendant argued at the hearing that the government failed to prove the allegations in violations 1-4, which related to the criminal charges for grand theft and criminal mischief, because both the Petition and Superseding Petition stated that the violations occurred on October 29, 2020; while October 29, 2020 was the date of Defendant's *arrest* on the state criminal charges, the state alleges the conduct occurred on October 21, 2020 and was discovered October 22, 2020.

Defendant argues that the undersigned should either recommend a finding of no probable cause as to the allegations as alleged or decline to make any findings unless and until Judge Moore approves an amended petition alleging the true date. The government avers in response that the

date charged in the Superseding Petition was "on or about" the date of the conduct and alternatively sought leave to amend the Petition to revise the date. Defendant urged the Court to deny that leave on the basis that any modification must be filed with and accepted by Judge Moore. The Parties were thus given leave to submit supplemental briefing on the matter, which they did (ECF Nos. 464, 465).

## II. THE PENDING PETITION FOR REVOCATION

The Superseding Petition was filed on October 7, 2021 (ECF No. 453) and charges Defendant with 14 violations:

1. Violation of Mandatory Condition, by failing to refrain from violation of the law. On October 29, 2020, in Miami, Florida, the defendant committed the offense of Burglary/Dwelling/Structure/Damage Less than $1000.00, contrary to Florida Statute 810.02(2)(C)2, a first-degree felony.

2. Violation of Mandatory Condition, by failing to refrain from violation of the law. On October 29, 2020, in Miami, Florida, the defendant committed the offense of Grand Theft 3rd Degree/Vehicle, contrary to Florida Statute 812.014(2)(C)6, a third-degree felony.

3. Violation of Mandatory Condition, by failing to refrain from violation of the law. On October 29, 2020, in Miami, Florida, the defendant committed the offense Grand Theft 2nd Degree/Greater than $20,000.00 less than $100,000.00, contrary to Florida Statute 812.014(2)(B), a second-degree felony.

4. Violation of Mandatory Condition, by failing to refrain from violation of the law. On October 29, 2020, in Miami, Florida, the defendant committed the offense of Criminal Mischief/$1,000.00 or More, contrary to Florida Statute 806.13(1)(B)3, a third-degree felony.

5. Violation of Mandatory Condition, by failing to refrain from violation of the law. On March 31, 2021, in Miami, Florida, the defendant committed the offense of Ran Stop Sign, in violation of Florida Statute 316.123(2)(A).

6. Violation of Mandatory Condition, by failing to refrain from violation of the law. On April 29, 2021, in Miami, Florida, the defendant committed the offense of Speed/Posted Zone (State Road), in violation of Florida Statute 316.187(1).

7. Violation of Mandatory Condition, by failing to refrain from violation of the law. On July 27, 2021, in Miami, Florida, the defendant committed the offense of Safety Belt Violation by Driver, in violation of Florida Statute 316.614(4)(B).

8. Violation of Mandatory Condition, by failing to refrain from violation of the law. On July 27, 2021, in Miami, Florida, the defendant committed the offense of Unlawful speed, in violation of Florida Statute 316.183(2).

9. Violation of Mandatory Condition, by failing to refrain from violation of the law. On July 31, 2021, in Miami, Florida, the defendant committed the offense of Careless Driving, in violation of Florida Statute 316.1925(1).

10. Violation of Mandatory Condition, by failing to refrain from violation of the law. On July 31, 2021, in Miami, Florida, the defendant committed the offense of Prohibited lights on Vehicle-Blue, in violation of Florida Statute 316.2397(2).

11. Violation of Mandatory Condition, by failing to refrain from violation of the law. On July 31, 2021, in Miami, Florida, the defendant committed the offense of No Registration Certificate, in violation of Florida Statute 320.0605.

12. Violation of Standard Condition, by failing to follow the instructions of the probation officer. On December 28, 2020, the defendant failed to call this probation officer every Monday while out on bond to provide updates on his state charges and employment status, as directed.

13. Violation of Standard Condition, by failing to notify the probation officer within 72 hours of being arrested or questioned by law enforcement. On March 31, 2021; April 29, 2021; July 27, 2021; and July 31, 2021; the defendant was given traffic citations by Miami Dade Police Department in Miami, Florida, and he failed to advise the U.S. Probation Officer.

14. Violation of Standard Condition, by failing to follow the instructions of the probation officer. On September 1, 2021, the defendant failed to provide monthly bank statements to confirm his employment status, as directed.

*Id*. at 2–3. As noted above, the government abandoned violations 5-11, and an evidentiary hearing was conducted with respect to violations 1-4 and 12-14, primarily arising from the alleged violations of Florida law.

### III. THE EVIDENTIARY HEARING

At the evidentiary hearing, the government called four witnesses to testify: (1) Guadalupe Melo, an employee of Public Storage; (2) Detective James Poling; (3) Detective Edward Henrique; and (4) United States Probation Officer Jason Roberts. The government filed the admitted hearing exhibits, consisting of documents from Public Storage, police reports, photographs of the subject property, still photographs of security footage from Public Storage, consents to search certain real and personal property, documentation from the alleged burglary victim, and photographs of Defendant's residence. The Court admitted the exhibits on October 22, 2021. The following is a brief summary of the testimony presented.

    **a.   Testimony of Guadalupe Melo**

Ms. Melo, a Property Manager with Public Storage for nearly nine years, testified that she rented one of Public Storage's storage units to Defendant on the evening of October 21, 2020, who represented that he was renting the unit for a cousin going through a separation from her spouse. Defendant requested an outdoor unit, telling Melo that it would be faster to reach the unit, drop belongings, and then leave, but he accepted an interior unit based on what Public Storage had available. Melo stated that during the initial rental process, Defendant entered the store without a face mask, and she offered to give him one. She left the room to procure the mask, and when she returned with it, Melo observed Defendant and his companion looking into the security camera monitors.

When Ms. Melo returned the next morning to begin a new shift, she noticed that the gate was open, which was unusual, and in the parking lot she found a distressed customer who was claiming that someone stole her moving truck. She later learned that a lock was cut on another unit and that

5

the unit was emptied of its contents, which included pallets of candles and perfumes intended for retail sale.

After law enforcement arrived, Ms. Melo reviewed the code activity for the gate permitting entry and exit to the storage units, finding that the last person to use a gate code the night before, the evening of October 21, was Defendant; the activity log showed Defendant's initial exit at 5:22 PM after renting the unit, along with his return at 8:50 PM that same night and his subsequent departure eight minutes later at 8:58 PM. Melo explained at the hearing that the gate closed at 9:00 PM, after which no one could use a code to get in or out of the gate. Melo printed the report showing the gate code activity and gave it to law enforcement, explaining that Defendant was an individual who rented a unit from her that previous evening.

Melo also testified that she reviewed security footage from the evening of October 21, 2020, which showed that the vehicle entering the property at 8:50 PM had multiple persons in the car, but that only one person—the driver—was in the car when the vehicle exited the property at just before 9:00 PM. Melo testified that in reviewing the footage she also witnessed individuals from the vehicle walk around the parking lot, enter the subject moving truck and drive it to the unit that was burglarized, where the truck stayed parked for an indeterminate amount of time. Melo later saw an individual in the truck cut the chain on the Public Storage entry and exit gate, open the gate manually, drive the truck through, and close the gate manually, after which the truck on the security footage drives away.

### b. Testimony of Detective James Poling

Detective Poling, one of the investigating officers with the Miami-Dade Police Department, testified that he conducted a search of the recovered moving truck, in which he found what he referred to as old moving materials; materials that matched those found in the burglarized storage

unit. Detective Poling further testified that a series of still photographs taken of security camera footage dated October 21, 2020 from the strip of businesses adjacent to Public Storage showed Defendant from a series of different camera angles; the timestamp on each still reflects that it was captured after 9:00 PM. A still taken from a different security camera shows an individual getting out of a vehicle identical to the silver vehicle registered to Defendant's wife; the individual exits the vehicle with bolt cutters in hand and places the bolt cutters over the fence, and a still taken three minutes later shows the bolt cutters coming back over the fence.

After obtaining Defendant's address through the identification of Defendant as the individual whose gate code was used last, Detective Poling twice visited the address listed and both times saw a silver vehicle in the driveway identical to the vehicle from the security footage. On his October 29, 2020 visit, Detective Poling obtained consent to search the silver vehicle and Defendant's residence. He found shoes and a bandana identical to those worn by Defendant in the stills from the security footage, as well as bolt cutters, and a number of Scensational branded candles identical to those taken from the burgled storage unit. The candles were placed in various locations around the residence; some were on tables or shelves, while others were found in bathrooms, concealed under the sink, within kitchen cabinets and drawers, and even within the warming drawer under the oven in Defendant's residence. Eighty-eight candles matching those stolen from the burgled storage unit were found in the residence.

### c. Testimony of Detective Edward Henriquez

Detective Henriquez, also an investigating officer with the Miami-Dade Police Department, testified that upon his arrival to Defendant's residence, he located the Defendant in one of the bathrooms; it was Detective Henriquez's impression that Defendant was hiding. Detective Henriquez testified that he read Defendant his Miranda rights, and Defendant executed the

Spanish-language version of a Miranda form. Detective Henriquez testified that he then asked Defendant to identify the individual in the stills taken from the security footage, and Defendant confirmed that he was the individual in the photographs. Defendant explained that he was in the area because he was simply visiting a "warehouse" that he rented for a family member, and he stopped while there to use the phone. Though Defendant confirmed that he entered and exited the warehouse using his code just before 9:00 PM, he maintained that it was a coincidence that he was there at that time and date.

Detective Henriquez asked Defendant about the large quantity of candles in the home, to which the Defendant stated that his wife likes candles and they thus purchase many candles. Detective Henriquez testified that thereafter, Defendant stated there was no possible way the detectives would be able to prove the candles found were in fact the ones believed to be missing.

### d. Testimony of United States Probation Officer Jason Roberts

Officer Roberts, Defendant's Probation Officer, testified that Defendant had done the following, all of which are conditions of his supervised release: (1) missed a weekly check-in with Officer Roberts; (2) failed to notify Officer Roberts of certain traffic citations received; and (3) failed to provide monthly bank statements to Officer Roberts to confirm his employment status.

### IV. THRESHOLD LEGAL QUESTIONS

Defendant urges the Court to either dismiss the violation proceeding as to charges 1-4 or resubmit the matter to Judge Moore, traveling on the theory that the government failed to prove what it charged when it described the date of the violation as October 29, 2020 in the Petition rather than October 21, 2020. According to Defendant, this mistake rises to the level of a Due

Process violation under *Morrissey*[1] and separately deprives the undersigned of the ability to render a determination on the matter because it is outside the scope of referral.

### a. Jurisdiction

As to the jurisdictional point, Defendant avers that referrals made pursuant to 28 U.S.C. § 636 and Magistrate Judge Rule 1 are for the limited purpose of conducting proceedings on the matters being referred. According to Defendant, the charging document—in this case, the Petition—forms the basis for the referral, but the referral itself is limited to a proceeding through which this Court may make an evidentiary finding as to the alleged violation. Defendant insists that because of the date discrepancy, any findings made by this Court would necessarily require a modification of the revocation petition, which he avers this Court is not authorized to do.

Defendant offers no caselaw construing the referral in the manner he suggests. The particular referral made in this case was made to the undersigned to "take all necessary and proper action as required by law with respect to *any and all violations* of Supervised Release as to Defendant (ECF No. 432 (emphasis added)). Important too is what the referral does *not* say—it does not state that the matter is referred to the undersigned to conduct an evidentiary hearing for the purpose of determining Defendant's guilt or innocence as to certain enumerated allegations in the Petition. And as the Eleventh Circuit held unequivocally in *United States v. Presley*, 487 F.3d 1346, 1349 (11th Cir. 2007), once a defendant comes before the court, the court has the authority to consider *any* violation of the terms of the defendant's supervised release. *Id*. (holding that the court's "authority to determine if [the defendant's] supervised release should be revoked was not confined to the specifications of the summons") (citations omitted); *see also United States v. Naranjo*, 259 F.3d 379, 383 (5th Cir.2001) ("[Section 3583(i)'s] plain language permits revocation based on any

---

[1] *Morrissey v. Brewer*, 408 U.S. 471, 489, (1972).

violation of a condition of supervised release occurring during the supervision term, even if not contained in a petition for revocation filed during that term, so long as a warrant or summons was issued during that term on the basis of an alleged violation.").

I thus find that this Court has the authority to make findings of fact as to whether the conduct alleged on October 21, 2021 constituted a violation of Defendant's supervised release and make a recommendation to the District Court thereupon as to revocation.

### b. Due Process

Defendant is still entitled to Due Process, and in accordance with those requirements, the purpose of a supervised release revocation petition is to provide a defendant with "notice of the claimed violations of his supervised release." *United States v. Cade*, 795 Fed. Appx. 718, 723 (11th Cir. 2019) (citing *Morrissey*, 408 U.S. at 489). The Eleventh Circuit in *Cade* went on to observe that its predecessor found in a prior case no violation of Due Process following a probation revocation petition that simply stated the reason for revocation was "arrest and possession of marihuana on November 24, 1974." *Id*. (quoting *United States v. Evers*, 534 F.2d 1186, 1187–88 (5th Cir. 1976)) (internal quotations omitted). The question the Court must consider, then, is whether the Petition describes the reason for revocation sufficient to, as a practical matter, put the defendant on notice of the specific violation giving rise to the revocation. *Id.*

I do not find that dating the offensive conduct as October 29 rather than October 21 in the Petition deprived Defendant of notice of the claimed violations. *See United States v. Sisimit-Sanic*, 305 F. Supp. 3d 1351, 1357 (S.D. Fla. 2018) (finding that the probation officer's reference in the petition to the incorrect statute in the petition did not deny the defendant notice of the violation alleged). Though Defendant argues that this mistake violates Due Process under *Morrissey*, he

neither explains how this is so nor does he offer any case in which a court has found such a date discrepancy rose to the level of a Due Process violation.

Though the Due Process inquiry is an objective one, and the Petition objectively informed Defendant of the violations alleged, the Petition in this case also followed and mirrored the state court charges being brought against Defendant. Indeed, recognizing that the conduct alleged in the state court case was likewise the basis for the charges levied in the government's Petition, Defendant repeatedly sought to continue the proceedings before this Court in the hopes that the state case would resolve first (*see, e.g.*, ECF No. 455, Defendant's Motion for Additional Continuance of Supervised Release Revocation Hearing (noting that the charges alleged in the Petition "are also the subject of a criminal case which is pending in Miami-Dade County Circuit Court" and that "the most significant issues which will be litigated during the supervised release violation will be resolved as part of Defendant's State court trial")).

The Petition itself alleges violations of the exact Florida criminal statutes alleged in the state case, and further notes that the violations occurred in October of 2020, as charged in the state case. While the conduct was in fact alleged to have occurred on October 21 rather than October 29, this is best viewed as a scrivener's error that would not, under the circumstances, deprive an individual of notice of the allegations against him.

Accordingly, I do not recommend that the Petition be dismissed or resubmitted for consideration anew by the district court.

V.  **FINDINGS OF FACT AND CONCLUSIONS OF LAW**

In probation revocation hearings, a court must only find that the defendant violated a condition of his supervised release by a preponderance of the evidence, rather than beyond a reasonable doubt. 18 U.S.C. § 3583(e)(3); *see also Johnson v. United States*, 529 U.S. 694, 700 (2000) (noting

that, even though such violations can lead to imprisonment, the violation need not be criminal). The Federal Rules of Evidence do not apply in supervised release revocation proceedings. *United States v. Frazier*, 26 F.3d 110, 114 (11th Cir. 1994). In weighing whether to admit hearsay testimony in a supervised release revocation proceeding, courts must "balance the defendant's right to confront adverse witnesses against the grounds asserted by the government for denying confrontation." *Id.* (citing *United States v. Penn*, 721 F.2d 762, 764 (11th Cir. 1983)).

The contested violations arise from Defendant's failure to refrain from the violation of law; specifically, allegations that he violated Florida Statutes 810.02(2)(C)2; 812.014(2)(C)6; 812.014(2)(B); and 806.13(1)(B)3.

Section 810.02(2)(c)2, Florida Statutes, provides that a person may be guilty of burglary "if, in the course of committing the offense, the offender...[e]nters an occupied or unoccupied dwelling or structure, and...[c]auses damage to the dwelling or structure, or property within the dwelling ... in excess of $1,000."

Section 812.014(2)(C)6 provides that a person may be guilty of grand theft of the third degree and a felony of the third degree if an individual "knowingly obtains or uses, or endeavors to obtain or to use, the property of another with intent to, either temporarily or permanently" either deprive the other person of a right to or benefit of the property or appropriate the property "his or her own use or to the use of any person not entitled to the use of the property," where the subject property is a motor vehicle.

Section 812.014(2)(B) provides that an individual may be guilty of grand theft in the first degree, punishable as a felony of the first degree if that individual "knowingly obtains or uses, or endeavors to obtain or to use, the property of another with intent to, either temporarily or permanently" either deprive the other person of a right to or benefit of the property or appropriate

12

the property "his or her own use or to the use of any person not entitled to the use of the property," where the subject property is valued between $20,000 and $99,999.99.

Section 806.13(1)(B)3 provides that an individual may be guilty of criminal mischief and a felony of the third degree if that individual "willfully and maliciously injures or damages by any means any real or personal property belonging to another," and that damage is "$1,000 or greater, or if there is interruption or impairment of a business operation or public communication, transportation, supply of water, gas or power, or other public service which costs $1,000 or more in labor and supplies to restore[.]"

The evidence sufficiently satisfies the preponderance of the evidence standard. Evidence in the form of the Public Storage gate code logs, still photos taken of the security footage from the adjoining business—photos that were corroborated by law enforcement's discovery of identical clothing and bolt cutters when searching Defendant's property—and Defendant's own statements to Officer Henriquez place Defendant at Public Storage just after 9:00 PM, when the moving truck was stolen and the storage unit was burglarized. Further, that same security footage depicts an individual at the scene getting out of a vehicle identical to the one registered under Defendant's wife's name and twice found parked outside Defendant's residence; that footage then shows the individual at the scene handing bolt cutters over the fence and into the Public Storage parking lot.

The final determinative piece of evidence offered by the government takes the form of the Scensational candles. The invoice offered through the testimony of Detective Poling evidences that a certain inventory of Scensational candles resided in the burgled storage unit until the night of October 21, 2020.[2] Law enforcement's search of Defendant's residence turned up an abundance of Scensational candles—88, to be exact. Photographic evidence shows that these candles were

---

[2] That invoice also valued the candles in excess of the $20,000 threshold contemplated by Section 812.014(2)(B).

13

found in a variety of places around Defendant's home, both in places one might expect to find a candle and in places where one would be surprised to find a candle; in addition to finding candles in Defendant's bathroom, on shelves, and on top of dressers, Miami-Dade law enforcement found candles stacked in drawers and cabinets in what appears to be Defendant's kitchen, and even in the warming tray under Defendant's oven. Notwithstanding Defendant's explanation to law enforcement about his wife's affinity for candles, the evidence strongly tends to prove that these are the same candles taken from the burgled storage unit.

In light of this evidence, I find it likelier than not that Defendant participated in the crimes charged in Violations 1-4, the underlying conduct for which consists of the breaking of the lock on the storage unit, stealing the moving truck, stealing the candles, and cutting the chain on the Public Storage gate. In so doing, Defendant violated the requirement of his supervised release that he refrain from violations of the law. I also find that Defendant's Probation Officer Jason Roberts offered credible and unrebutted testimony as to the conduct charged in Violations 12-14, which allege that Defendant missed a weekly check-in with Officer Roberts, did not report a series of traffic citations, and did not provide Officer Roberts with updated banking information as required.

Accordingly, I find that Defendant violated his conditions of supervised release.

## VI.   CONCLUSION

Based on the foregoing, it is hereby **RECOMMENDED** that the District Court adopt the finding that Defendant violated his conditions of supervised release as alleged in the Superseding Petition at Violations 1-4 and 12-14, and hold a sentencing hearing to determine the appropriate disposition.

Pursuant to Local Magistrate Rule 4(b) and Federal Rule of Civil Procedure 73, the parties have fourteen (14) days from service of this Report and Recommendation within which to file

written objections, if any, with the District Judge. Any request for an extension of this deadline must be made within seven (7) calendar days from the date of this Report and Recommendation. Failure to timely file objections shall bar the parties from de novo determination by the District Judge of any factual or legal issue covered in the report and shall bar the parties from challenging on appeal the District Judge's Order based on any factual or legal conclusions included in this Report to which the parties failed to object. 28 U.S.C. § 636(b)(1); *Resolution Tr. Corp. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993).

**RESPECTFULLY SUBMITTED** in Chambers this 9th day of December, 2021.

LAUREN F. LOUIS
UNITED STATES MAGISTRATE JUDGE